JOHN C. ULIN (State Bar No. 165524)
john.ulin@aporter.com
EMILIA P.E. MORRIS (State Bar No. 253681)
emilia.morris@aporter.com
JAKE R. MILLER (State Bar No. 273941)
jake.miller@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California  90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Attorneys for Plaintiff Philip Morris USA Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP MORRIS USA INC., <br><br> *Plaintiff,* <br><br> vs. <br><br> JOSELINO BRAN LOPEZ, et al., <br><br> *Defendants.* | Case No. 5:11-CV-00279-JAK (OPx) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PHILIP MORRIS USA INC.'S APPLICATION FOR DEFAULT JUDGMENT** <br><br> [Fed. R. Civ. P. 55(b)(2)] <br><br> Date: January 9, 2012 <br> Time: 8:30 AM <br> Courtroom: 750 <br> Judge: Hon. John A. Kronstadt |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.   DEFAULT JUDGMENT IS PROCEDURALLY PROPER ............................ 2

II.  THE *EITEL* FACTORS FAVOR GRANTING DEFAULT JUDGMENT
     AGAINST DEFENDANT ........................................................................ 3

     A.   The Possibility of Prejudice to Plaintiff ....................................... 3

     B.   The Merits of Plaintiff's Substantive Claims and the Sufficiency
          of the Complaint ........................................................................ 4

     C.   The Sum of Money At Stake ........................................................ 6

     D.   The Possibility of a Dispute Regarding Material Facts ................... 7

     E.   Whether Default Was Due to Excusable Neglect ............................ 7

     F.   The Policy Favoring Decisions On the Merits ................................ 8

III. THE COURT SHOULD GRANT PHILIP MORRIS USA THE RELIEF
     REQUESTED IN ITS COMPLAINT ...................................................... 8

     A.   The Court Should Award Philip Morris USA Statutory Damages
          Pursuant to 15 U.S.C. § 1117(c) .................................................. 8

     B.   Philip Morris USA Is Entitled to Permanent Injunctive Relief ......... 12

     C.   The Court Should Award Philip Morris USA the Costs of This
          Action ....................................................................................... 17

CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*Accuride Int'l, Inc. v. Accuride Corp.*,
  871 F.2d 1531 (9th Cir. 1989) .......................................................... 4

*Autodesk, Inc. v. Flores*,
  2011 WL 337836 (N.D. Cal. Jan. 31, 2011) .................................... 14

*Cartier, a Div. of Richemont N.A., Inc. v. Samo's Sons, Inc.*,
  2005 WL 2560382 (S.D.N.Y. Oct. 11, 2005) .................................... 5

*Chanel, Inc. v. Gordashevsky*,
  558 F. Supp. 2d 532 (D.N.J. 2008) .................................................. 5

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ............................................. 3, 4, 6, 7, 8

*Gayle Martz, Inc. v. Sherpa Pet Group, LLC*,
  651 F. Supp. 2d 72 (S.D.N.Y. 2009) ............................................. 4, 14

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  286 F. Supp. 2d 284 (S.D.N.Y. 2003) ............................................. 5

*Herman Miller Inc. v. Alphaville Design Inc.*,
  2009 WL 3429739 (N.D. Cal. Oct. 22, 2009) .................................. 14

*Hermes Int'l v. Kiernan*,
  2008 WL 4163208 (E.D.N.Y. Aug. 28, 2008) .................................. 9

*Inwood Labs., Inc. v. Ives Labs. Inc.*,
  456 U.S. 844 (1982) ........................................................................ 16

*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997) ......................................................... 12

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
  453 F.3d 377 (6th Cir. 2006) ..................................................... 15, 16

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
  378 F. Supp. 2d 448 (S.D.N.Y. 2005) ......................................... 10, 11

ii

*Microsoft Corp. v. Marturano,*
    2009 WL 1530040 (E.D. Cal. May 27, 2009) .................................................. 15

*Microsoft Corp. v. Online Datalink Computer, Inc.,*
    2008 WL 1995209 (S.D. Cal. May 6, 2008)............................................ 9, 12

*N. Cheyenne Tribe v. Norton,*
    503 F.3d 836 (9th Cir. 2007) ............................................................ 14

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.,*
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ............................................... 16

*Nike, Inc. v. B & B Clothing Co.,*
    2007 WL 1515307 (E.D. Cal. May 22, 2007) ...................................... 9

*Opticians Ass'n of Am. v. Indep. Opticians of Am.,*
    920 F.2d 187 (3d Cir. 1990)............................................................. 16

*Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.,*
    640 F. Supp. 928 (S.D.N.Y. 1986), aff'd, 816 F.2d 68 (2d. Cir. 1987)............ 16

*Philip Morris USA Inc. v. A & V Minimarket, Inc.,*
    592 F. Supp. 2d 669 (S.D.N.Y. 2009) ......................................... passim

*Philip Morris USA Inc. v. Allen Distribs.,*
    48 F. Supp. 2d 844 (S.D. Ind. 1999).................................. 4, 14, 15, 17

*Philip Morris USA Inc. v. Banh,*
    2005 WL 5758392 (C.D. Cal. Jan. 14, 2005) .................................... 17

*Philip Morris USA Inc. v. Castworld Products, Inc.,*
    219 F.R.D. 494 (C.D. Cal. 2003)................................. 3, 4, 6, 7, 8, 17

*Philip Morris USA, Inc. v. Escandon,*
    2005 U.S. Dist. LEXIS 26766 (E.D. Cal. Nov. 4, 2005).......... 2, 6, 7, 10, 11, 13

*Philip Morris USA Inc. v. Felizardo,*
    2004 WL 1375277 (S.D.N.Y. June 18, 2004) ............................... 4, 10

*Philip Morris USA Inc. v. HM Quickmart, Inc.,*
    2010 WL 3852412 (D.N.J. Sept. 27, 2010) .................... 2, 6, 10, 11, 13

*Philip Morris USA Inc. v. Jackson,*
    2011 WL 4352546 (E.D.N.Y. July 26, 2011)........................... 6, 9, 10

*Philip Morris USA Inc. v. Jaritza Supermarket, Inc.,*
    2009 WL 4496047 (D.N.J. Nov. 9, 2009) .......................................... 2, 6, 11, 13

*Philip Morris USA Inc. v. Lee,*
    547 F. Supp. 2d 667 (W.D. Tex. 2008) ............................................... 10

*Philip Morris USA Inc. v. Liu,*
    489 F. Supp. 2d 1119 (C.D. Cal. 2007) .................................................. 5

*Philip Morris USA, Inc. v. M & S Mkt., Inc.,*
    2006 U.S. Dist. LEXIS 83247 (E.D. Cal. Nov. 15, 2006)............ 2, 6, 10, 11, 13

*Philip Morris USA Inc. v. Marlboro Express,*
    2005 WL 2076921 (E.D.N.Y. Aug. 26, 2005) ...................................... 4

*Philip Morris USA Inc. v. Shalabi,*
    352 F. Supp. 2d 1067 (C.D. Cal. 2004) .......................... 2, 4, 10, 12, 14, 15, 16

*Philip Morris USA Inc. v. Tammy's Smoke Shop, Inc.,*
    726 F. Supp. 2d 223 (E.D.N.Y. 2010) ............................................. 9, 10

*Polo Fashions, Inc. v. Craftex, Inc.,*
    816 F.2d 145 (4th Cir. 1987) ............................................................. 4

*Sony Music Entm't Inc. v. Elias,*
    2004 WL 141959 (C.D. Cal. Jan. 20, 2004) ........................................ 3

*TeleVideo Sys., Inc. v. Heidenthal,*
    826 F.2d 915 (9th Cir. 1987) ........................................................ 6, 7

*Tiffany (NJ) Inc. v. Luban,*
    282 F. Supp. 2d 123 (S.D.N.Y. 2003) ............................................... 9

*United States v. Rivera,*
    2003 WL 22429482 (C.D. Cal. July 18, 2003)..................................... 2

*In re Vuitton et Fils S.A.,*
    606 F.2d 1 (2d Cir. 1979).................................................................. 5

**DOCKETED CASES**

*Philip Morris USA Inc. v. 51st Produce, Inc.,*
    No. 06-CV-0587, Dkt. No. 634 (C.D. Cal. Dec. 18, 2006) ............................. 2

*Philip Morris USA Inc. v. Dhillon,*
    No. 02-CV-8257, Dkt. No. 124 (C.D. Cal. May 21, 2003) ................................ 2

*Philip Morris USA Inc. v. Hoskin,*
    No. 05-CV-3278, Dkt. No. 75 (C.D. Cal. Apr. 3, 2006) .................................... 2

*Philip Morris USA Inc. v. Lopez,*
    No. 11-CV-0279, Dkt. Nos. 54 & 55 (C.D. Cal. Oct. 20, 2011) .... 2, 7, 9, 11, 13

*Philip Morris USA Inc. v. Parkchester Food Mkt. Corp.,*
    10-CV-1623, Dkt. No. 10 at 4 (S.D.N.Y. July 30, 2010) ................................ 17

*Philip Morris USA Inc. v. Prospect Park Food Corp.,*
    No. 09-CV-2113, Dkt. No. 31 (E.D.N.Y. Aug. 9, 2010)............................. 2, 13

*Philip Morris USA Inc. v. Shalabi,*
    No. 03-CV-4037, Dkt. No. 2,542 (C.D. Cal. June 3, 2004) ................... 2, 11, 17

## STATUTES AND RULES

15 U.S.C. § 1065 ........................................................................................... 10

15 U.S.C. § 1114 ........................................................................................ 1, 4, 5

15 U.S.C. § 1116(a) .......................................................................................... 12

15 U.S.C. § 1117 ..................................................................................... 1, 6, 8, 17

15 U.S.C. § 1125 ........................................................................................... 1, 5

Fed. R. Civ. P. 4(e)(2)(A).................................................................................... 7

Fed. R. Civ. P. 55 ........................................................................................ 2, 3, 8

1    Plaintiff Philip Morris USA Inc. ("Philip Morris USA") hereby moves for a

2    default judgment against Joselino Bran Lopez, individually and doing business as

3    Bran Tools New & Used.

4                                    **INTRODUCTION**

5            On February 14, 2011, Philip Morris USA filed a lawsuit against nine retailers

6    who were caught selling counterfeit MARLBORO® brand cigarettes in violation of

7    the Lanham Act, including Defendant Joselino Bran Lopez, individually and doing

8    business as Bran Tools New & Used.  On March 7, 2011, Philip Morris USA served

9    the Complaint on Defendant Lopez by personal service.  Philip Morris USA made

10   numerous attempts to contact Lopez by telephone and mail after service and to

11   negotiate a settlement.  After initially indicating an interest in attempting to resolve

12   the lawsuit voluntarily, Defendant never agreed to resolve the claims against him via

13   consent judgment and ultimately ceased responding to Philip Morris USA's

14   communications altogether.  Because Defendant also never responded to the

15   Complaint, Philip Morris USA took his default and, with no apparent further potential

16   for settlement discussions remaining, now moves for default judgment against him.

17           As a result of Defendant's failure to appear in this action, the material factual

18   allegations in the Complaint must be accepted as true.  Those allegations establish all

19   of the necessary elements of Philip Morris USA's claims for (i) infringement of

20   registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C.

21   § 1114, and (ii) false designation of origin and trademark and trade dress

22   infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

23   on which default judgment should be entered.  On the facts presented here, it is also

24   appropriate for the Court to grant Philip Morris USA all of the relief requested in this

25   motion.  Specifically, Philip Morris USA seeks the following:

26       • **Statutory damages** pursuant to 15 U.S.C. § 1117(c) against Defendant in

27           the amount of $3,000;

28

- 1 -

1    • **A Permanent Injunction** enjoining Defendant from continuing to sell

2    counterfeit MARLBORO® brand cigarettes; and

3    • **Costs** against Defendant in the amount of $341.48.

4    Federal courts across the country have awarded Philip Morris USA similar

5    relief on default judgment motions against hundreds of identically-situated retailers

6    who sold counterfeit MARLBORO® brand cigarettes and similarly failed to respond

7    to the claims against them in lawsuits that sought to hold them accountable for their

8    unlawful conduct. *See, e.g., Philip Morris USA Inc. v. Lopez*, No. 11-CV-0279, Dkt.

9    Nos. 54 & 55 (C.D. Cal. Oct. 20, 2011); *Philip Morris USA Inc. v. 51st Produce, Inc.*,

10   No. 06-CV-0587, Dkt. No. 634 (C.D. Cal. Dec. 18, 2006); *Philip Morris USA Inc. v.*

11   *Hoskin*, No. 05-CV-3278, Dkt. No. 75 (C.D. Cal. Apr. 3, 2006); *Philip Morris USA*

12   *Inc. v. HM Quickmart, Inc.*, 2010 WL 3852412, at *1-2 (D.N.J. Sept. 27, 2010); *Philip*

13   *Morris USA Inc. v. Prospect Park Food Corp.*, No. 09-CV-2113, Dkt. No. 31

14   (E.D.N.Y. Aug. 9, 2010) (Ulin Decl., ¶ 15, Ex. G); *Philip Morris USA Inc. v. Jaritza*

15   *Supermarket, Inc.*, 2009 WL 4496047, at *1-2 (D.N.J. Nov. 9, 2009); *Philip Morris*

16   *USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 673-77 (S.D.N.Y. 2009);

17   *Philip Morris USA, Inc. v. M & S Mkt., Inc.*, 2006 U.S. Dist. LEXIS 83247, at *5-14

18   (E.D. Cal. Nov. 15, 2006); *Philip Morris USA, Inc. v. Escandon*, 2005 U.S. Dist.

19   LEXIS 26766, at *5-13 (E.D. Cal. Nov. 4, 2005); *Philip Morris USA Inc. v. Shalabi*,

20   No. 03-CV-4037, Dkt. No. 2,542 (C.D. Cal. June 3, 2004) (Ulin Decl., ¶ 14, Ex. F);

21   *Philip Morris USA Inc. v. Dhillon*, No. 02-CV-8257, Dkt. No. 124 (C.D. Cal. May 21,

22   2003) (Ulin Decl., ¶ 13, Ex. E). For the reasons set forth below, this Court should do

23   the same.

24                                   **ARGUMENT**

25   **I.   DEFAULT JUDGMENT IS PROCEDURALLY PROPER**

26   Pursuant to Fed. R. Civ. P. 55, "[w]here a party fails to plead or otherwise

27   defend against a complaint, after entry of default, default judgment may be entered

28   against him." *United States v. Rivera*, 2003 WL 22429482, at *5 (C.D. Cal. July 18,

2003); *see also Sony Music Entm't Inc. v. Elias*, 2004 WL 141959, at *3 (C.D. Cal. Jan. 20, 2004); Fed. R. Civ. P. 55(a).  In this case, Philip Morris USA filed its Complaint on February 14, 2011.  Ulin Decl., ¶ 2, Ex. A (Complaint).  Defendant was duly served with the Complaint by personal service on March 7, 2011.  Ulin Decl., ¶ 3, Ex. B (Proof of Service).  Defendant failed to respond to the Complaint and the clerk eventually entered his default on May 10, 2011.  Ulin Decl., ¶¶ 4-6, Ex. C (Certificate of Default).  As these documents demonstrate, all of the requirements of Rule 55(b) are satisfied, and the entry of default judgment against Defendant is procedurally proper.

## II.   THE *EITEL* FACTORS FAVOR GRANTING DEFAULT JUDGMENT AGAINST DEFENDANT

In exercising their discretion to award a default judgment, courts in the Ninth Circuit consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).  As explained below, the *Eitel* factors heavily favor granting default judgment against Defendant.

### A.   The Possibility of Prejudice to Plaintiff

Absent default judgment in this case, Philip Morris USA would be without recourse for recovery.  Moreover, Philip Morris USA will suffer great prejudice through the continued loss of legitimate sales and diminution of goodwill it has created in its trademarks if default is not entered.  Ulin Decl., Ex. A (Compl. ¶¶ 7, 16).  As one district court held, "[i]nfringing [the MARLBORO® and red roof trademarks] erodes that good will by confusing consumers, perhaps causing them to associate the trademarks with undesirable characteristics, such as . . . poor quality. . . .

1   [such a loss] goes straight to the heart of Plaintiff's business." *Philip Morris USA Inc.*

2   *v. Allen Distribs.*, 48 F. Supp. 2d 844, 855 (S.D. Ind. 1999); *see also Gayle Martz,*

3   *Inc. v. Sherpa Pet Group, LLC*, 651 F. Supp. 2d 72, 85 (S.D.N.Y. 2009) ("'the

4   unauthorized use of a mark . . . invariably threatens injury to the economic value of

5   the goodwill and reputation associated with [the] mark.'") (citations omitted).

6   Accordingly, the first *Eitel* factor favors entry of default judgment. *Castworld*

7   *Products, Inc.*, 219 F.R.D. at 499.

8       **B.    The Merits of Plaintiff's Substantive Claims and the Sufficiency of**
9             **the Complaint**

10      The second and third *Eitel* factors are satisfied because Counts I and II of the

11   Complaint, which form the basis of this motion, both state claims on which Philip

12   Morris USA may recover. *See Castworld Products, Inc.*, 219 F.R.D. at 499. The

13   elements of Philip Morris USA's claims are:

14   • **Count I:  Infringement of Registered Trademarks in Violation of**

15      **Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)):** (1) Defendant's

16      use in commerce, (2) without Plaintiff's consent, (3) of a reproduction or

17      copy of a registered trademark, (4) in connection with the sale, offering for

18      sale, or distribution of any goods, and (5) that such use is likely to deceive

19      consumers. 15 U.S.C. § 1114(1)(a). Likelihood of confusion under

20      Sections 32 and 43(a) of the Lanham Act is a factual determination

21      normally made using an eight-factor analysis. *See Accuride Int'l, Inc. v.*

22      *Accuride Corp.*, 871 F.2d 1531, 1533-34 (9th Cir. 1989). "However, 'in

23      cases involving counterfeit marks, it is unnecessary to perform the step-by-

24      step examination . . . because counterfeit marks are inherently confusing.'"

25      *Philip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal.

26      2004) (quoting *Philip Morris USA Inc. v. Felizardo*, 2004 WL 1375277, at

27      *5 (S.D.N.Y. June 18, 2004)); *accord Philip Morris USA Inc. v. Marlboro*

28      *Express*, 2005 WL 2076921, at *4 (E.D.N.Y. Aug. 26, 2005); *see Polo*

1    *Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)

2    (recognizing "a presumption of a likelihood of confusion" where a

3    defendant uses counterfeit marks); *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4

4    (2d Cir. 1979) ("the very purpose of . . . marketing [counterfeit] items is to

5    confuse the buying public into believing it is buying the true article");

6    *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287

7    (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion").

8   • **Count II:  False Designation of Origin and Trademark and Trade**

9     **Dress Infringement in Violation of Section 43(a) of the Lanham Act (15**

10     **U.S.C. § 1125(a)):** (1) Defendant's use in commerce, (2) in connection with

11     any sale, offering for sale, or distribution of any goods, (3) of any word,

12     term, name, symbol, or device, or any combination thereof, or any false

13     designation of origin, (4) which is likely to deceive as to the affiliation,

14     connection, or association of defendants with plaintiff, or as to the origin,

15     sponsorship, or approval of defendant's goods by plaintiff.  15 U.S.C.

16     § 1125(a)(1)(A).  The same facts that establish a violation of Section 32(1)

17     of the Lanham Act are sufficient to prove a violation of Section 43(a).  *See*

18     *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1121-22 (C.D. Cal.

19     2007); *see also Cartier, a Div. of Richemont N.A., Inc. v. Samo's Sons, Inc.*,

20     2005 WL 2560382, at *3 n.3 (S.D.N.Y. Oct. 11, 2005) and *Chanel, Inc. v.*

21     *Gordashevsky*, 558 F. Supp. 2d 532, 537 (D.N.J. 2008) ("Federal trademark

22     infringement, 15 U.S.C. § 1114(1)(a), and a false designation of origin

23     claim, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards

24     pursuant to the Lanham Act.") (citation & footnote omitted).

25    Philip Morris USA has alleged facts sufficient to establish all the elements of

26   each of these claims against Defendant.  The Complaint sets forth in detail Philip

27   Morris USA's ownership of, and exclusive right to use, the MARLBORO® 

28   trademarks, the extent to which Philip Morris USA has used these marks, and the

- 5 -

1   fame of and goodwill associated with the marks. Ulin Decl., Ex. A (Compl. ¶¶ 5, 12-

2   14). Philip Morris USA further alleges that Defendant used counterfeit versions of

3   Philip Morris USA's marks in commerce, in connection with the sale of counterfeit

4   cigarettes, and without Philip Morris USA's consent. Ulin Decl., Ex. A (Compl. ¶¶ 4,

5   6, 15, 19, 22). Finally, it alleges that Defendant's use of counterfeit versions of Philip

6   Morris USA's marks is likely to cause confusion or mistake, or to deceive customers,

7   and has thereby damaged Philip Morris USA. Ulin Decl., Ex. A (Compl. ¶¶ 6-7, 16-

8   17, 19-20, 22-23). Because Defendant has defaulted, these well-pleaded allegations

9   must now be accepted as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

10  917-18 (9th Cir. 1987). Philip Morris USA has, therefore, established its entitlement

11  to default judgment against Defendant on each of the claims set forth above. *See*

12  *Castworld Products, Inc.*, 219 F.R.D. at 503; *accord M & S Mkt., Inc.*, 2006 U.S.

13  Dist. LEXIS 83247, at *9; *Escandon*, 2005 U.S. Dist. LEXIS 26766, at *9; *HM*

14  *Quickmart, Inc.*, 2010 WL 3852412, at *1-2; *A & V Minimarket, Inc.*, 592 F. Supp.

15  2d at 675; *Jaritza Supermarket, Inc.*, 2009 WL 4496047, at *1-2; *cf. Philip Morris*

16  *USA Inc. v. Jackson,* 2011 WL 4352546, at *2 (E.D.N.Y. July 26, 2011).

17  Accordingly, the second and third *Eitel* factors favor entry of default judgment.

18      **C.   The Sum of Money At Stake**

19        The fourth *Eitel* factor focuses on the amount of money at stake in relation to

20  the seriousness of the defendant's conduct. *Castworld Products, Inc.*, 219 F.R.D. at

21  500. The Lanham Act authorizes statutory damages up to $200,000 per counterfeit

22  mark per type of good sold, and more if the counterfeit sales are willful. 15 U.S.C.

23  § 1117(c). On facts identical to the ones presented here, courts have found awards of

24  between $2,000 and $10,000 appropriate to address the misconduct of counterfeit-

25  selling retailers who ignore lawsuits filed against them. *See HM Quickmart, Inc.*,

26  2010 WL 3852412, at *2 (awarding $4,000); *Jaritza Supermarket, Inc.*, 2009 WL

27  4496047, at *2 (awarding $4,000); *A & V Minimarket, Inc.*, 592 F. Supp. 2d at 674

28  (awarding $2,000); *M & S Mkt., Inc.*, 2006 U.S. Dist. LEXIS 83247, at *9 (awarding

1    $10,000); *Escandon*, 2005 U.S. Dist. LEXIS 26766, at *9 (awarding $10,000).

2    Moreover, this Court has already awarded $3,000 against identically-situated retailers

3    in this case. *See Lopez*, No. 11-CV-0279, Dkt. Nos. 54 & 55. As these decisions

4    suggest, the fourth *Eitel* factor favors entry of default judgment.

    **D.**    **The Possibility of a Dispute Regarding Material Facts**

6         When a defendant defaults, all well-pleaded allegations in the complaint,

7    except those relating to the amount of damages, are accepted as true. *See TeleVideo*

8    *Sys., Inc.*, 826 F.2d at 917-18; *see also A & V Minimarket, Inc.*, 592 F. Supp. 2d at

9    674 ("Here, the defendants' failure to respond either to the complaint or to the papers

10   seeking a default judgment has left the Court with no information as to any of the

11   factors relating to the defendants' circumstances. Thus, the Court draws every

12   reasonable inference on these points against the defendants."). Philip Morris USA

13   filed a well-pleaded complaint alleging facts necessary to supports its claims and the

14   clerk entered default against Defendant. Thus, no dispute has been raised as to the

15   material allegations of the Complaint and the possibility of any genuine issue is

16   remote at best. The fifth *Eitel* factor therefore favors entry of default. *See Castworld*

17   *Products, Inc.*, 219 F.R.D. at 500.

    **E.**    **Whether Default Was Due to Excusable Neglect**

19        Defendant was duly served by personal service with the summons and

20   complaint on March 7, 2011 in accordance with Fed. R. Civ. P. 4(e)(2)(A). Ulin

21   Decl., ¶ 3, Ex. B. Months have passed since Defendant was served. During that time

22   Philip Morris USA has attempted to contact Defendant by telephone and in writing

23   on multiple occasions to discuss voluntary resolution and to give him prior notice that

24   Philip Morris USA would file a motion for default judgment against him if he did not

25   respond to efforts to contact him. *See* Ulin Decl., ¶¶ 6-7. Although Defendant at one

26   point expressed a willingness to settle this matter, he subsequently refused to settle or

27   participate in the litigation, and failed to respond to Philip Morris USA's further

28   efforts to resolve this case. Ulin Decl., ¶ 7. Philip Morris USA has also served

1    Defendant with this application.  Ulin Decl., ¶ 9.  Under these circumstances -- where

2    Defendant had actual knowledge of this lawsuit, spoke with Philip Morris USA

3    regarding resolution and the possibility of default, and chose to default -- it is clear

4    that default was entered as a consequence of Defendant's neglect or disregard of the

5    judicial process, and not as a result of excusable neglect.  The sixth *Eitel* factor favors

6    granting a default judgment.

7          **F.**    **The Policy Favoring Decisions On the Merits**

8          The mere existence of Fed. R. Civ. P. 55(b) "indicates that the seventh *Eitel*

9    factor is not alone dispositive."  *Castworld Products, Inc.*, 219 F.R.D. at 501.

10   Defendant's failure to answer the Complaint makes a decision on the merits

11   impractical, if not impossible.  Where a defendant fails to defend, Fed. R. Civ. P. 55

12   permits termination of a case before hearing the merits.  *Id.*  That is precisely what

13   occurred in this case.  Accordingly, the final *Eitel* factor does not preclude entering

14   default judgment.  *Id.* at 501.

15         Taken as a whole, the *Eitel* factors favor entry of default judgment in this case.

16   **III.**    **THE COURT SHOULD GRANT PHILIP MORRIS USA THE RELIEF**

17              **REQUESTED IN ITS COMPLAINT**

18         **A.**    **The Court Should Award Philip Morris USA Statutory Damages**
           **Pursuant to 15 U.S.C. § 1117(c)**

19         In cases where a defendant has distributed, offered for sale, or sold goods

20   bearing counterfeit trademarks, the Lanham Act permits a prevailing plaintiff to

21   forego actual damages and to elect statutory damages of "not less than $1,000 or

22   more than $200,000 per counterfeit mark per type of goods or services sold, offered

23   for sale, or distributed, as the court considers just . . . ."  15 U.S.C. § 1117(c)(1);[1] *see*

24   *A & V Minimarket, Inc.*, 592 F. Supp. 2d at 673.  As set forth below, Philip Morris

25

---

26   [1] Prior to its 2008 Amendment, 15 U.S.C. § 1117(c) provided for statutory damages
of "not less than $500 or more than $100,000 per counterfeit mark per type of goods

27   or services sold, offered for sale, or distributed, as the court considers just."
Accordingly, the pre-2009 cases cited in this motion reflect the lower range of

28   available statutory damages.

1    USA has elected to pursue statutory damages from Defendant in the amount of

2    $3,000, an amount previously awarded by this Court against identically-situated

3    defendants in this case. *See Lopez*, No. 11-CV-0279, Dkt. Nos. 54 & 55.

4         "As one court has recognized, '[t]he statutory damages provision was added in

5    1995 [to the Lanham Act] because 'counterfeiters' records are frequently nonexistent,

6    inadequate, or deceptively kept ..., making proving actual damages in these cases

7    extremely difficult if not impossible.'" *Nike, Inc. v. B & B Clothing Co.*, 2007 WL

8    1515307, at *3 (E.D. Cal. May 22, 2007) (quoting *Tiffany (NJ) Inc. v. Luban*, 282 F.

9    Supp. 2d 123, 124 (S.D.N.Y. 2003)); *see also Microsoft Corp. v. Online Datalink*

10   *Computer, Inc.*, 2008 WL 1995209, at *3 (S.D. Cal. May 6, 2008) (recognizing the

11   appropriateness of awarding statutory damages in default judgment cases because the

12   infringer controls the information needed to prove actual damages and that

13   information is not disclosed). This case presents a paradigm situation for an award of

14   statutory damages. By his failure to participate in the litigation, Defendant has

15   deprived Philip Morris USA of the opportunity to take discovery that might have

16   enabled Philip Morris USA to determine its actual damages. Without that discovery,

17   statutory damages are the only effective means to compensate Philip Morris USA for

18   its losses. *See Microsoft Corp.*, 2008 WL 1995209, at *3; *A & V Minimarket, Inc.*,

19   592 F. Supp. 2d at 673. It is Defendant, and not Philip Morris USA, who must bear

20   the uncertainty of his failure to keep or provide sufficient records. *Jackson,* 2011 WL

21   4352546, at *3; *Philip Morris USA Inc. v. Tammy's Smoke Shop, Inc.*, 726 F. Supp.

22   2d 223, 225 (E.D.N.Y. 2010); *Hermes Int'l v. Kiernan*, 2008 WL 4163208, at *4

23   (E.D.N.Y. Aug. 28, 2008).

24        In addition, Philip Morris USA seeks statutory damages to deter Defendant

25   from continuing to sell counterfeit MARLBORO® brand cigarettes and to deter other

26   similarly-situated retailers from following Defendant's bad example, with respect to

27   both illegal sales of counterfeit cigarettes and disregard for his obligations to respond

28   to this lawsuit. In determining the proper amount of damages to award against

1    identically-situated retailers who were caught selling counterfeit cigarettes, federal

2    courts around the country have based their awards, in part, on the rationale of

3    deterring both the defendant in each lawsuit and similarly-situated parties from future

4    counterfeit trafficking.  *See, e.g., Shalabi*, 352 F. Supp. 2d at 1076 (awarding

5    statutory damages "to deter . . . retailers from continuing the illegal behavior");

6    *accord A & V Minimarket, Inc.*, 592 F. Supp. 2d at 674 (citing "deterrent effect on

7    other potential infringers and the defendants' lack of cooperation"); *M & S Mkt., Inc.*,

8    2006 U.S. Dist. LEXIS 83247, at *8-9 (same); *Escandon*, 2005 U.S. Dist. LEXIS

9    26766, at *8-9 (same); *accord Jackson*, 2011 WL 4352546, at *3; *Tammy's Smoke*

10   *Shop, Inc.*, 726 F. Supp. 2d at 225; *see also Lorillard Tobacco Co. v. Jamelis*

11   *Grocery, Inc.*, 378 F. Supp. 2d 448, 458 (S.D.N.Y. 2005) ("counterfeit cigarettes have

12   become an increasingly troublesome public problem for which there is a strong need

13   for deterrence"); *Felizardo*, 2004 WL 1375277, at *7 (statutory damages "are also

14   aimed at deterrence of future counterfeiting-both by the bad actor in question and by

15   other potential counterfeiters") (citation omitted).  Philip Morris USA respectfully

16   submits that the need for deterrence to prevent future sales of counterfeit

17   MARLBORO® brand cigarettes is equally strong here.

18        In this case, Defendant's sale of counterfeit MARLBORO® brand cigarettes

19   infringed Philip Morris USA's rights in the MARLBORO® trademark.  Ulin Decl.,

20   Ex. A (Compl. ¶¶ 4, 13); *M & S Market, Inc.*, 2006 U.S. Dist. LEXIS 83247, at *9

21   n.2; *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 680 (W.D. Tex. 2008).   The

22   MARLBORO® trademark was registered much longer than five years ago, and it is

23   valid and incontestable.  *See* 15 U.S.C. § 1065; *Felizardo*, 2004 WL 1375277, at *4;

24   *Shalabi*, 352 F. Supp. 2d at 1070, n.l; *HM Quickmart, Inc.*, 2010 WL 3852412, at *1.

25   Accordingly, Philip Morris USA is entitled to recover a minimum of $1,000 and a

26   maximum of $200,000 for each counterfeit mark from every retailer who sells

27   counterfeit MARLBORO® brand cigarettes, as Defendant has done.  *See M & S*

28   *Market, Inc.*, 2006 U.S. Dist. LEXIS 83247, at *9 n.2; *Escandon*, 2005 U.S. Dist.

LEXIS 26766, at *9 n.3.  By this motion, Philip Morris USA seeks $3,000 in

statutory damages against this counterfeit-selling retailer.  In light of Defendant's sale

of counterfeit MARLBORO® brand cigarettes, his knowledge of this lawsuit, and his

failure to respond either to the Complaint or to Philip Morris USA's repeated efforts

to contact him about voluntary resolution of the case, Philip Morris USA submits that

an award of $3,000 is both fair and reasonable and, indeed, falls at the low end of

both the statutory range and what other courts have awarded against similarly situated

retailers who were caught selling counterfeit MARLBORO® brand cigarettes.[2]  *See*

*M & S Market, Inc.*, 2006 U.S. Dist. LEXIS 83247, at *9 ($10,000); *Escandon*, 2005

U.S. Dist. LEXIS 26766, at *8-9 ($10,000); *Jamelis,* 378 F. Supp. 2d at 458 ($2,500

per mark); *HM Quickmart, Inc.*, 2010 WL 3852412, at *2 ($4,000); *Jaritza*

*Supermarket, Inc.*, 2009 WL 4496047, at *2 ($4,000); *A & V Minimarket, Inc.*, 592 F.

Supp. 2d at 673 ($2,000 under pre-amended statute under which statutory damage

range was half what it is now); *accord Shalabi,* 352 F. Supp. 2d 1076 (finding that a

$10,000 statutory damages award against retailers caught selling counterfeit

MARLBORO® brand cigarettes was "well below the maximum [statutory damages]

available to [Philip Morris USA]" and thus "demonstrably reasonable," especially

when defendants "refused to voluntarily cooperate" with Philip Morris USA).

Indeed, this Court has previously awarded Philip Morris USA $3,000 in statutory

damages against identically-situated defendants in this case who defaulted on their

obligations to respond to the resulting civil claims against them.  *See Lopez*, No. 11-

CV-0279, Dkt. Nos. 54 & 55.  Philip Morris USA submits that Defendant should

suffer the same consequences.[3]

---

[2] Philip Morris USA reserves the right to seek up to $200,000 per counterfeit
trademark if the entry of default judgment is contested.  By seeking only $3,000 at
this time, Philip Morris USA is not waiving any of its rights under the law.
[3] The court's reasoning in *Shalabi* -- finding the requested statutory damages
reasonable based in part on the defendants' failure to respond to the motion against
them and refusal to cooperate in efforts to reach a voluntary resolution or to
investigate counterfeit suppliers -- is especially salient here.  Philip Morris USA has
agreed to Consent Judgments and Permanent Injunctions with 8 of the 16 defendants
(Footnote Cont'd on Following Page)

**B.    Philip Morris USA Is Entitled to Permanent Injunctive Relief**

The Lanham Act specifically authorizes injunctive relief to protect against trademark counterfeiting. 15 U.S.C. § 1116(a); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997); *Microsoft Corp.*, 2008 WL 1995209, at *3; *Shalabi*, 352 F. Supp. 2d at 1074-75.  In this case, Philip Morris USA requests that the Court issue a permanent injunction against Defendant that includes the following material terms:

- A prohibition against purchasing, distributing, selling, offering for sale, or otherwise using in commerce any cigarettes in packaging bearing counterfeits of any of the MARLBORO® Trademarks, or assisting, aiding or abetting any other person or entity in doing so; and

- A prohibition against using the MARLBORO® Trademarks or trademarks or trade dress that is confusingly similar therewith, except in connection with the sale and offering for sale of genuine MARLBORO® brand cigarettes.

Philip Morris USA further requests that the Court include in the permanent injunction a requirement that, in the event Philip Morris USA determines in good faith that Defendant has offered for sale and/or sold counterfeit MARLBORO® brand cigarettes after the date of entry of Default Judgment, Defendant cooperate in good faith with Philip Morris USA in its investigations of counterfeit sales at his retail establishments, including without limitation, by: (a) permitting representatives and/or

---

(Footnote Cont'd From Previous Page)

in this case, allowing those retailers to settle the claims against them without paying any monetary damages. *See* Ulin Decl., ¶ 8.  Philip Morris USA has sent multiple letters to Defendant offering him the same opportunity to resolve this matter on identical terms. *See* Ulin Decl., ¶ 7.  Defendant's failure to respond to those letters and Philip Morris USA's other efforts to communicate with him about settlement and the identity of his counterfeit suppliers further justifies an award of statutory damages in the modest amount Philip Morris USA requests here.  A $3,000 statutory damages award would send an appropriate message that Defendant and similarly-situated retailers cannot sell counterfeit cigarettes, and then simply ignore the lawsuit that seeks to hold them accountable for their violation of federal law.

designees of Philip Morris USA to conduct inspections, without notice, of Defendant's cigarette inventories to determine whether packs of cigarettes bearing the MARLBORO® Trademarks are counterfeit (with such inspections proceeding at any of Defendant's retail establishments between the hours of 9:00 a.m. and 5:00 p.m. on any such day Defendant's retail establishments are open for business) and to retain possession of any such cigarettes that are determined to be counterfeit; (b) responding to reasonable requests for information about Defendant's suppliers or other sellers of genuine or counterfeit MARLBORO® brand cigarettes; and (c) cooperating with Philip Morris USA's representatives and/or designees in their investigations of any suppliers or other sellers of genuine or counterfeit MARLBORO® brand cigarettes. Courts have repeatedly granted Philip Morris USA default judgments with permanent injunctions containing substantially similar terms against identically-situated sellers of counterfeit cigarettes. *See, e.g.*, *HM Quickmart, Inc.*, 2010 WL 3852412, at *2; *Jaritza Supermarket, Inc.*, 2009 WL 4496047, at *2; *A & V Minimarket, Inc.*, 592 F. Supp. 2d at 675; *M & S Mkt., Inc.*, 2006 U.S. Dist. LEXIS 83247, at *9-12; *Escandon*, 2005 U.S. Dist. LEXIS 26766, at *10; *Prospect Park Food Corp.*, No. 09-CV-2113, slip op. at 3-4, Dkt. No. 31 (Ulin Decl., ¶ 15, Ex. G). Moreover, this Court has previously entered default judgments with these exact terms against identically-situated defendants in this case. *See Lopez*, No. 11-CV-0279, Dkt. Nos. 54 & 55. Philip Morris USA respectfully requests that this Court again do likewise.[4]

Injunctive relief is appropriate where the plaintiff "demonstrates '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

---

[4] Philip Morris USA notes that each of the requested provisions of the [Proposed] Default Judgment are substantially similar to the terms of Consent Judgments that have been entered against thousands of identically-situated retailers in litigation arising from their sales of counterfeit MARLBORO® brand cigarettes, including this court. *See* Ulin Decl., ¶¶ 16-17, Exs. H-I. Surely, Defendant, who has ignored this lawsuit and his obligations herein, should be subjected to the same remedies as identically-situated retailer-defendants who participated in the lawsuits against them, cooperated in informal discovery and agreed to voluntary settlements.

1    balance of hardships between the plaintiff and defendant, a remedy in equity is

2    warranted; and (4) that the public interest would not be disserved by a permanent

3    injunction.'" *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007)

4    (citation omitted).  All four factors are easily satisfied here.

5    • **Irreparable Harm/Inadequacy of Legal Remedies:** It cannot be disputed that

6       cigarette counterfeiting harms Philip Morris USA by depriving it of legitimate

7       sales and by damaging the goodwill it has created in its trademarks, and no

8       remedy at law can compensate it for this harm.  As one district court has held,

9       "[i]nfringing [the MARLBORO® and red roof trademarks] erodes that good

10      will by confusing customers, perhaps causing them to associate the trademarks

11      with undesirable characteristics, such as . . . poor quality.  Money damages

12      cannot adequately compensate such a loss - a loss which goes straight to the

13      heart of Plaintiff's business." *Allen Distribs., Inc.*, 48 F. Supp. 2d at 855.

14      Indeed, trademark infringement is "generally presumed to give rise to

15      irreparable harm for which there is no adequate remedy at law." *Autodesk, Inc.*

16      *v. Flores*, 2011 WL 337836, at *7 (N.D. Cal. Jan. 31, 2011) (citation omitted);

17      *Shalabi*, 352 F. Supp. 2d at 1074-75; *see also Herman Miller Inc. v. Alphaville*

18      *Design Inc.*, 2009 WL 3429739, at *8 (N.D. Cal. Oct. 22, 2009) (injunctive

19      relief is the "remedy of choice" for trademark infringement because there is no

20      adequate legal remedy for continued acts of infringement) (citation omitted);

21      *Gayle Martz, Inc.*, 651 F. Supp. 2d at 85 ("'[t]he unauthorized use of a mark

22      . . . invariably threatens injury to the economic value of the goodwill and

23      reputation associated with a . . . mark'") (citation omitted).  Absent an

24      injunction, Philip Morris USA will continue to suffer these irreparable injuries

25      for which it has no adequate remedy at law.  Because Philip Morris USA has

26      suffered irreparable harm and has no adequate legal remedy, the first two

27      factors are satisfied.

28

- 14 -

- **Balance of Hardships:** Assessing the relative hardships, the balance tips undeniably in favor of issuing an injunction.  Because Philip Morris USA is seeking to enjoin only the illegal sale of *counterfeit* MARLBORO® brand cigarettes, the injunction will not adversely affect any *legitimate* business operations, and thus Defendant will not suffer any cognizable hardship by its issuance.  *See Shalabi*, 352 F. Supp. 2d at 1075; *accord Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) ("the only 'harm' that the contemplated injunction would visit upon [the defendant] is hardly a legally cognizable one: It would be prohibited from selling counterfeit products, an illegal act to begin with"); *Microsoft Corp. v. Marturano*, 2009 WL 1530040, at *8 (E.D. Cal. May 27, 2009) (finding the balance of hardships factor satisfied where an injunction merely required defendant to comply with the Lanham and Copyright Acts).  By contrast, the harm caused to Philip Morris USA by Defendant's counterfeiting activities goes "straight to the heart" of Philip Morris USA's business.  *Allen Distribs., Inc.*, 48 F. Supp. 2d at 855; *Shalabi*, 352 F. Supp. 2d at 1075.  Moreover, with respect to the inspection and discovery provisions, the injunctive relief sought would prevent Defendant from imposing yet another burden on Philip Morris USA in the form of a motion for post-judgment relief in the event that Defendant sells counterfeit cigarettes again in the future.  The requested injunctive relief places reasonable burdens on Defendant, who is a defaulting counterfeit trafficker, by authorizing inspection and discovery remedies that are specifically tailored to remove counterfeit cigarettes from his retail stores and to identify the parties that supplied them.  Nonetheless, the terms of the proposed injunction provide Defendant with a degree of protection by requiring Philip Morris USA to determine in good faith that Defendant has again sold or offered for sale counterfeit MARLBORO® brand cigarettes before Philip Morris USA may exercise the inspection and discovery remedies.  Philip Morris USA

respectfully submits that this balance is more than fair to Defendant, who sold counterfeit MARLBORO® brand cigarettes, falsely represented that he would settle the lawsuit arising from his unlawful conduct, and thereafter ignored the matter. The balance of harms thus favors granting injunctive relief.

- **Public Interest:** "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197-98 (3d Cir. 1990) (citations omitted). It is well established that trademark law protects not only the private interest of the trademark owner but also the public's interest in not being confused by the infringing products. *See Inwood Labs., Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 855 n.14 (1982) ("[T]he infringer deprives consumers of their ability to distinguish among the goods of competing manufacturers.") (citation omitted); *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived - in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.") (citation omitted). "Thus, the purchasing public is an unnamed party in every action for trademark infringement." *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 640 F. Supp. 928, 932 (S.D.N.Y. 1986), *aff'd*, 816 F.2d 68 (2d. Cir. 1987). The instant action is no exception. As soon as the sales of counterfeit cigarettes by Defendant are stopped, patrons of Defendant's retail establishment will no longer be confused or deceived by the difference between the counterfeit cigarettes and genuine MARLBORO® brand cigarettes. As such, the issuance of a permanent injunction will plainly serve the public interest. *See Shalabi*, 352 F. Supp. 2d at 1075 (an injunction against further retail sales of counterfeit MARLBORO® brand cigarettes serves the public interest); *accord Amouri's Grand Foods, Inc.*, 453 F.3d at 383 ("an injunction against the sale of counterfeit cigarette packages would advance two

1   fundamental purposes of trademark law: preventing consumer confusion and

2   deception in the marketplace and protecting the trademark holder's property

3   interest in the mark") (citation omitted); *Allen Distribs., Inc.*, 48 F. Supp. 2d at

4   855.

5        Because all of the above factors are satisfied, the Court should grant Philip

6   Morris USA permanent injunctive relief against Defendant Lopez on the same terms

7   that it has imposed on other identically-situated defendants in this case.

8   **C.   The Court Should Award Philip Morris USA the Costs of This**
    **Action**
9

10        "When a violation of any right of the registrant of a mark registered in the

11   Patent and Trademark Office . . . shall have been established in any civil action

12   arising under [the Lanham Act,] the plaintiff shall be entitled . . . subject to the

13   principles of equity, to recover . . . (3) the costs of the action." 15 U.S.C. § 1117(a).

14   A finding of Defendant's liability under the Lanham Act therefore entitles Philip

15   Morris USA to recover its costs. Philip Morris USA seeks reimbursement of costs

16   from Defendant in the following amount: $341.48. These costs reflect Defendant's

17   *pro rata* share of the filing fees ($23.33) and the cost of service of process on

18   Defendant ($318.15). *See* Ulin Decl., ¶ 11. This Court and others around the country

19   have awarded costs on this basis in identical cases. *See, e.g., Philip Morris USA Inc.*

20   *v. Banh*, 2005 WL 5758392, at *8 (C.D. Cal. Jan. 14, 2005); *Shalabi*, No. 03-CV-

21   4037, Dkt. No. 2,542 at 13 (Ulin Decl., ¶ 14, Ex. F); *Castworld Products, Inc.*, 219

22   F.R.D. at 502-03; *A & V Minimarket, Inc.*, 592 F. Supp. 2d at 675; *Philip Morris USA*

23   *Inc. v. Parkchester Food Mkt. Corp.*, 10-CV-1623, Dkt. No. 10 at 4 (S.D.N.Y. July

24   30, 2010) (Ulin Decl., ¶ 12, Ex. D). The Court should do so again here.

25

26

27

28

1

## CONCLUSION

2     For all the foregoing reasons, Philip Morris USA respectfully requests the

3 Court enter a default judgment against Defendant on all of the claims for relief in the

4 Complaint and grant injunctive relief, statutory damages and costs as set forth above.

5

6 Dated:  December 5, 2011          ARNOLD & PORTER LLP

7

8                                          By: /s/ John C. Ulin

9                                               John C. Ulin
                                                *Attorneys for Plaintiff*
10                                              *Philip Morris USA Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             )   ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 777 South Figueroa Street, 44th Floor, Los Angeles, California 90017-5844.

On December 5, 2011,  I served the foregoing document described as:
**MEMORANDUM OF LAW IN SUPPORT OF PHILIP MORRIS USA INC.'S APPLICATION FOR DEFAULT JUDGMENT**

☒     By placing true copies thereof enclosed in sealed envelope(s) addressed to the following person(s)

Joselino Bran Lopez                    Jeffrey S. Weiss
9108 Flower Street                      Law Offices of Jeffrey S. Weiss
Bellflower, CA 90706-5608         4640 Lankershim Blvd., Suite 699
                                                North Hollywood, California  91602-1818

Joselino Bran Lopez
6804 S. Central Ave., Los
Angeles, CA 90001

☒     **BY U.S. MAIL**  I enclosed the document(s) in a sealed envelope(s) or package addressed to the person(s) at the address(es) listed above or on the attached service list and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Los Angeles, California.

☐     **VIA COURT NOTICE OF ELECTRONIC FILING**  The document(s) will be served by the court via NEF and hyperlink to the document.  On [type date], I checked the CM/ECF docket for this case or adversary proceeding and determined that the person(s) listed above or on the attached service list is/are on the Electronic Mail Notice List to receive NEF transmission at the email addresses listed above or on the attached service list.

☒     **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Vicky Apodaca

-19-